(58 South. 338.)

No. 19,230.

A. WYCKOFF & SON CO. OF LOUISIANA v. TOWN OF WINNFIELD et al.

(March 25, 1912.　Rehearing Denied April 22, 1912.)

*(Syllabus by the Court.)*

SALES　(§ 181*) — WATERWORKS MATERIAL—DEFECTS—EVIDENCE.

　　The burden of proof was on the defendant to prove its special defense; and this it has failed to do.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. § 181.*]

Appeal from Fifth Judicial District Court, Parish of Winn; George Wear, Judge.

Action by the A. Wyckoff & Son Company of Louisiana against the Town of Winnfield and others.　Judgment for plaintiff, and defendants appeal.　Affirmed.

Mathews & Gamble, for appellants.　White, Thornton & Holloman and Grisham & Oglesby, for appellee.

BREAUX, C. J.　Plaintiff, a corporation organized in Louisiana under her laws, brought this suit for the sum of $2,317.36 and interest, stipulated in a contract entered into between the parties, in which plaintiff bound itself, in accordance with specifications, to deliver and to put in a proper waterworks system in the town of Winnfield.

The defendant corporation was authorized to enter into the agreement.

Through a waterworks commission the municipality ordered from plaintiff on May 8, 1910, a number of thousands of feet of pipe to stand 110 pounds pressure.　Plaintiff bound itself to furnish a competent inspector to see the material properly laid.

Plaintiff avers that it furnished the materials aggregating the contract price, and an inspector was detailed to see to the work of laying the mains properly; that it performed its part of the contract.

The testimony discloses that the municipality had a sum of about $3,000 in bank to meet the account of plaintiff derived from bonds issued and sold by the town.

Plaintiff obtained an injunction to restrain defendant from applying as much of this amount as was necessary to pay its claim to the payment of any other claim.

Defendant denied all indebtedness on the ground that the pipes and material sold under the contract were not fit for use; that they never were used, as they are not such as plaintiff represented they would be.　Defendant denies all indebtedness, and, in addition, reconvenes for damages in the sum of $1,692.25, and details the items of alleged damages.

The facts are:　That the pipes are wooden water pipes of which there was little known in this state, but it is said that they are extensively used in other localities and take the place of iron.　They are, we are informed by the evidence, used for waterworks, well curbing, mine shaft crossings, flumes for irrigation, sewers, and other works.

That no contract was written and signed by the parties is one of the complaints of the defendant, although there was a verbal agreement that such a contract would be signed.

Plaintiff, without insisting upon a written contract, shipped pipes and fittings, and defendant, it is admitted, had them unloaded from the cars.

An inspector was sent by plaintiff company to see to the laying of the pipes and properly connecting them.

The complaint is that these pipes leaked, and thereby a large volume of water escaped from the pipes which rendered pumping water pretty expensive. Although in operating the plant the pressure was diminished, there were leaks along the line of the wooden main of thousands of gallons of water.

Defendant avers that the company represented to the waterworks commission that wood piping was as useful and satisfactory as iron piping.

Either the plaintiff promised too much, or the defendant expected more than it should. It ended by defendant refusing to use the pipes and to pay for them.

On the part of plaintiff it appears that these pipes have passed the experimental period, and are giving entirely good service elsewhere. The pipes are made of cypress, with pitch inside and outside. The joints fit, and are watertight.

The extremes in this instance are far from meeting. According to plaintiff, defendant very much exaggerates in setting up numerous defects, while the defendant is equally as positive that the claim of plaintiff is entirely without merit.

Although there was no contract, the following is a fairly sufficient substitute:

"Please book our order to:
    6,000 ft. 6" pipe for 100 lb. pressure at 31¢.
    2,000 ft. 4" pipe for 100 lb. pressure at 22¢.
"Same to be constructed according to your standard specifications and shipped when required after thirty days from date. The quantities mentioned are approximate, and may be departed from, a reasonable amount to be later determined. You are to furnish free of cost to us a competent inspector, to see that the material is properly laid.
"6" tees at $4.50, 4" tees at $3.50."

On this score it is too late in this litigation to write down conjectures as to what might have been the result if a contract had been written. It remains that it does not appear upon whom it devolved to prepare and write a contract and to have it signed.

The plaintiff's witnesses have testified without contradiction in support of plaintiff's claim. Witnesses for defendant are equally as positive and direct that plaintiff failed to furnish good material and piping to enable defendant to have satisfactory waterworks.

The contract entered into between plaintiff and defendant did not receive due attention. It was not written, and performance was left to the good faith of the parties to it. It consisted of an order for the material at price agreed upon and the shipment of the material by plaintiff to defendant. Plaintiff, by the effect of the agreement, bound itself to deliver the wooden pipes and other materials to withstand 110 pounds. The defendant paid the freight. The defendant was to dig the ditches necessary to put in the back filling.

It was also agreed that plaintiff would send an inspector to inspect the work, and another to see to the laying of the pipes. This was done.

It is unfortunate for defendant that delay arose at the very first in regard to accepting delivery of the pipes. Immediately after receiving the order, the pipes were loaded in cars at Alexandria, but the shipment was stopped by defendant during one month.

It has given plaintiff some ground for the complaint that, although the pipes were exactly as agreed upon, as proven by the testimony of its witnesses, they were damaged while left in the loaded cars at Alexandria, La., from which place they were shipped to defendant; that during that time the pipes were drying, owing to the hot days of August.

There was unquestionably delay, which should have been avoided. No good reason is given why this delay was not avoided. Plaintiff's contention is that the material

was delivered on the cars at Alexandria, from which time it was at the risk of the town of Winnfield. Throughout the trial plaintiff's contention was that it had done all that it had promised to do, but that, owing to the cause just stated, and on account of other failures to attend properly to its part of the work on the part of the defendant, it was not possible to furnish materials that would answer the purpose, as no material will prove as useful as it should if the needed labor is not applied; that, under the circumstances, it, plaintiff, is not responsible for the uselessness of the mains;

The evidence does not sustain the conclusion that plaintiff's pipes were originally defective and unfit for the purpose intended. There was a test made by defendant's employes after the pipes had been laid and were in operation. It does not appear that determined protest was made, or that defendant's agent sought during the trial to put the responsibility for any defects upon the plaintiff.

This brings us to a consideration of the other failure alleged by plaintiff, to which we stated above we would again refer later in deciding, for, as before stated, as to the materials, the plaintiff unquestionably delivered wooden water pipes and fittings to defendant, the purchase of which the latter admits, and which it has not succeeded in proving were not such as the plaintiff sold, if we take into account the manner of the work of defendant's employes in laying and covering the pipe lines, or rather the failure to timely cover the pipes, as sworn to by plaintiff's witnesses, and not successfully denied by defendant's witnesses.

The operation of the plant also was not, we infer from the testimony, all that it should have been.

Now, as to the failure to put in the filling and cover the pipes. That, we infer, was not done in a workmanlike manner. The fill-

ing of the trenches and covering of the pipes in them was part of the work, under the agreement, which defendant had bound itself to do, and which defendant through its employés neglected. The rain fell before they were closed, and the pipes were pressed entirely out of their alignment. Some of the witnesses even testified that they floated in the trenches. This evidently was very damaging to the work.

If this be as alleged and sworn to, small wonder that they leaked after such an experiment.

B. F. Powell had the contract with the town for digging the trenches for the wooden water pipes and afterwards covering them. He testified positively that in the first line he filled the ditch every couple of hundred feet, and that while thus properly performing the work he was stopped by the superintendent of the waterworks representing the defendant town, and directed only to cover the pipes sufficiently to keep the sun from melting the tar.

The witness in his confidence that the leaks could be stopped stated, some time previous to his testifying, that he would take a contract to stop the leaks, and, if he did not stop them, he would not charge anything.

It does not seem that defendant, upon whom rested the burden of proof, was desirous of proving the alleged defectiveness of the material by a test conducted contradictorily with the plaintiff by personal inspection of the pipes and the leaks, and thereby fix the responsibility for whatever defect there was.

The next point of contention is that in operating the waterworks the pressure must have been greater than it should have been. It will be remembered that 110 pounds was fixed as the maximum of pressure according to the conditions of the sale.

The indications are that in emergencies,

such as fires, the pressure must have been greater than 110 pounds. A valve on one of the pipe lines was broken and a bonnet under the valve. They were made of strong wrought iron. Defendant sought to prove that the breakage was not owing to the pressure of the water, but the result of torsion or twisting with a wrench.

That contention is not sustained by the facts. There was only one wrench. From the proof in regard to it and from the testimony in regard to the valve and the bonnet, we judge that it was not the cause of the break.

An expert, one who seemed to know what he was testifying about, said that, if it had been broken with a wrench, it would be the result of torsion or twisting, and in that case it would have been twisted off at the smaller part, which was not the case; whereas, if it was the result of the internal pressure of the water, it would be apt to break at the greatest cross-section—just the place where it was broken.

These pipes, we have noted, were of wood. They were made of staves wrapped with iron bands. The outer and inner surface creosoted. They cost about one-third less than iron, and doubtless require care and attention in handling them. These, it does not abundantly appear they received. There may have been water hammering in addition to great pressure.

The leaks were along the joints, it is said, where the pipes were driven together. The evidence is that the joints fitted well when the pipes were laid.

It may be that owing to water hammering or extraordinary pressure, or for other causes, for which plaintiff is not responsible, these joints were put out of level, made to leak.

The weight of the testimony in all of this is not with the defendant. We are unable to conclude that upon ex parte proceedings it was not possible without further attempt than was made for the defendant to relieve itself from all further liability. We do not understand that the pipes are entirely out of all use. We noted that there was something said about extension with iron pipes at certain places along the pipe lines. Be that as it may, according to the weight of the testimony, defendant owes the amount claimed.

The district judge who heard the witnesses testify, who was near the waterworks while testifying, and who had the very best opportunity to judge for himself of the issues presented, decided for plaintiff.

After carefully reading the testimony, we have arrived at the conclusion that there is no error in the judgment.

For reasons stated, the judgment is affirmed.